IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| WILLIAM AND BROOKE GRAMES, | ) | |
| | ) | |
| CRAIG B. AND CYNTHIA D. DICKIE, | ) | |
| | ) | |
| JUDY H. JOHNSON, | ) | |
| | ) | |
| JAMES AND DIANE KOSTAN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PATRICK J. AND LISA A. LOYET, | ) | |
| | ) | |
| Plaintiffs, | ) | No. |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | JURY DEMANDED |
| SARASOTA COUNTY, FLORIDA, | ) | |
| | ) | |
| ANN D. BEGEMAN, | ) | |
| | ) | |
| PATRICK J. FUCHS, | ) | |
| | ) | |
| MARTIN J. OBERMAN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SURFACE TRANSPORTATION BOARD, | ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT,
QUIET TITLE, INJUNCTIVE RELIEF AND DAMAGES**

**SUMMARY OF THIS LAWSUIT**[1]

*This lawsuit arises from a rails-to-trails taking in which Sarasota County,
Florida landowners ask this Court to, among other things, enjoin Sarasota County from*

---

[1] This summary is provided for the convenience of the Court and parties.

*removing or demolishing these owners' private property in order to build a public recreational trail until the legitimacy of Sarasota County's and the federal government's taking is established and until these owners are justly compensated for that property taken from them. This lawsuit is brought under both the Fifth Amendment to the United States Constitution and Article X, Sec. 6 of the Constitution of the State of Florida.*

*The federal government took these owners' land for the northern extension of the Legacy Trail between Sarasota and Venice. The Legacy Trail is a public recreational trail and a rail-trail corridor easement the federal government "railbanked" under the National Trails System Act.[2]*

*In the early 1900s, these landowners' predecessors-in-title granted Seaboard Air Line Railway a right-of-way easement allowing the railroad to use a strip of their land to build and operate a railway line between Sarasota and Venice. When the Seaboard and its successor railroads no longer operated, the original easement terminated, and the present-day owners held unencumbered title and the exclusive right to possess and use their land and to exclude others from their property.*

*The Seaboard Air Line Railway went bankrupt. The railroad right-of-way ultimately went to CSX Transportation (CSXT) which leased the right-of-way to Seminole Gulf Railway (Seminole Gulf). By 2002, CSXT and Seminole Gulf no longer operated a railroad across this strip of land. In 2019, CSXT and Seminole Gulf petitioned the federal Surface Transportation Board (the Board) for authority to abandon the railroad right-of-way. The Board granted the railroad permission to abandon this railway line.*

*Under Florida property law and the terms of the original easement, the railroad right-of-way easement terminated, and the present-day landowners held unencumbered title to their land and enjoyed the exclusive right to use and possess*

---

[2]  The National Trails System Act of 1968 (as amended 1983), codified at 16 U.S.C. § 1241, *et seq.*

*their land.[3]   In short, CSXT and Seminole Gulf had no right to sell or transfer an easement across these owners' land to anyone.[4]*

*But the federal government wanted the land under otherwise-abandoned railroad right-of-way easements to be used for public recreation and wanted to retain jurisdiction over these owners' land so the Board could authorize a new federal carrier to build a new public transportation corridor across the land in the future.  To achieve this objective Congress amended the National Trails System Act adding section 8(d)[5] which authorized the federal government to take owners' "reversionary" interests in land and allow a non-railroad to use the owners' private property for public recreation (such as a trail) until the federal government authorizes a new railroad to build a railway across these owners' land.[6]  The federal government and Sarasota County are*

---

[4]  Chief Justice Roberts explained that when a railroad no longer uses its right-of-way, the owner of the fee estate regains unencumbered title and possession of their land:

> The essential features of easements—including, most important here, what happens when they cease to be used—are well settled as a matter of property law. An easement is a "nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."  "Unlike most possessory estates, easements ... may be unilaterally terminated by abandonment, leaving the servient owner with a possessory estate unencumbered by the servitude."  In other words, if the beneficiary of the easement abandons it, the easement disappears, and the landowner resumes his full and unencumbered interest in the land.

*Marvin M. Brandt Rev. Tr. v. United States*, 572 U.S. at 104-05 (2014) (quoting Restatement (Third) of Property).

[4]  *See Preseault v. Interstate Commerce Commission,* 494 U.S. 1 (1990) (*Preseault I*) and the Alabama Supreme Court's recent decision in *Monroe Cnty. Comm'n v. A.A. Nettles, Sr. Props*., No. 1170738, 2019 Ala. LEXIS 37, at *1 (Apr. 26, 2019) .

[5]  Codified at 16 U.S.C. §1247(d).

[6]  We use the term "reversionary" as a shorthand description of the owner of the fee estate's interest.  This is not technically correct, since nothing "reverts," but it is frequently used by courts to describe how landowners regain their full possessory interest in the property that was once burdened by the railroad easement.  The owner of the fee estate continually possesses the fee estate.   "There is an alternative way…to describe property transactions involving easements.  Instead of calling the property owner's retained interest a fee simple burdened by the easement, this alternative labels the property owner's retained interest following the creation of an easement as a 'reversion' in fee.  Upon the termination, however achieved, of the easement, the 'reversion' is said to become fully possessory; it is sometimes loosely said that the estate 'reverts' to the owner."  *Preseault v. United States,* 100 F.3d 1525, 1533 (Fed. Cir. 1996) (*Preseault II*); *see also Marvin M. Brandt Rev. Trust v. United States*, 572 U.S. 93,

*taking private property for a new federal rail-trail corridor. In April 2004 the Board issued an order invoking the federal Trails Act and took a right-of-way across private land between Venice and Sawyer Loop Road. This was the subject of prior Trails Act litigation. The government's taking of property for this southern segment of the Legacy Trail was the subject of prior litigation. See Rogers v. United States, 90 Fed. Cl. 418 (2009). See also McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608 (2013), and *Childers v. United States*, 116 Fed. Cl. 486 (2014).*

*The federal government has paid the owners whose property was taken for this southern segment of the Legacy Trail. In December 2017 the Board issued an order extending the Legacy Trail about one-and-one-half miles north of Sawyer Loop Road. The owners of the property taken for this extension sued the federal government seeking compensation in* Cheshire Hunt v. United States*. The Board then issued another order invoking the Trails Act and taking more landowners' private property to extend the Legacy Trail into downtown Sarasota from Ashton Road to Payne Park. The federal government's third order is the order that took these owners' land and gave rise to this lawsuit.*

*Sarasota County has demanded many of these owners to remove "encroachments" (such as pools, fences, sheds and other improvements) located within the newly-created federal easement. Sarasota County has not told the owners the authority it has to make these demands.*

*When any governmental entity takes private property, the United States Constitution requires the government pay the owner "just compensation" for the property the government has taken.* [7] *Additionally, if a taking is under color of state law, Florida's constitution requires the government pay the owner "full compensation" to make the owner whole and put the owner in as good a position*

---

106, n.4 (2014), and *Monroe County Comm'n v. Nettles,* 2019 Ala. LEXIS 37 (April 26, 2019) (petition for certiorari pending).

[7] The Fifth Amendment to the United States Constitution provides, "No person shall be…deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Consider also Supreme Court Justice Holmes's decision in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416 (1922) ("We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."), and the Supreme Court's decision in *Armstrong v. United States,* 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."). These Fifth Amendment protections are applied against state and local governments through incorporation by the 14th Amendment.

*financially as he or she would have been if the property had not been taken.*[8] *The United States Supreme Court ruled that the federal government's invocation of the Trails Act takes an owner's private property, and the Just Compensation Clause of our Constitution compels the federal government to pay the owner for that property the federal government took.*[9] *The federal government must also reimburse the owner's legal fees and litigation expenses and must pay the owner interest for the government's delay in paying the owners compensation. See Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601 et seq. (URA).*

*Sarasota County is similarly constrained by both the Fifth Amendment of the United States Constitution and by Article X, Sec. 6 of the Constitution of the State of Florida. If Sarasota County attempts to condemn private property through its powers of eminent domain, it must comply with Article X, Sec. 6 of the Constitution of the State of Florida, as implemented by Chapters 73 and 74 of the Florida Statutes. Sarasota County has not done this.*

*Neither the federal government nor Sarasota County has paid (nor even offered to pay) these landowners. The landowners have filed a lawsuit seeking compensation from the United States in the United States Court of Federal Claims. This Fifth Amendment Takings Clause claim is brought under the Tucker Act (28 U.S.C. 1491) and is pending in the United States Court of Federal Claims. The Tucker Act does not, however, provide the Court of Federal Claims jurisdiction to issue declaratory or injunctive relief. Nor does the Court of Federal Claims have jurisdiction to quiet title under 28 U.S.C. 2409a or award damages or order Sarasota County to compensate these owners for any property Sarasota County claims to have taken in excess of the*

---

[8] Article X, Sec. 6 of the Constitution of the State of Florida provides that "No private property shall be taken except for public purpose with full compensation therefor paid to each owner . . ." Under Florida law, the measure of "full compensation" is a constitutional entitlement wherein the theory and spirit of such guarantee requires the practical attempt to make the owner whole. *Behm v. Division of Administration, Dept. of Transportation*, 383 So.2d 216 (Fla. 1980); *Jacksonville Expressway Authority v. Henry G. Du Pree Co.*, 108 So.2d 289 (Fla. 1959), 69 A.L.R.2d 1445. Such measure also includes payment of an owner's attorneys' fees and costs. *Dade County v. Brigham,* 47 So2d 602 (Fla. 1950).

[9] *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990) (*Preseault I*); *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (*Preseault II*); *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004); *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368 (2006); *Illig v. United States,* 274 Fed. Appx. 883 (2008), *cert. denied* 557 U.S. 935 (2009); *Ladd v. United States,* 630 F.3d 1015, 1020 (Fed. Cir. 2010) (*Ladd I*), *reh'g denied* 646 F.3d 910 (Fed. Cir. 2011); *Ladd v. United States*, 713 F.3d 648, 652 (Fed. Cir. 2013) (*Ladd II*); *Navajo Nation v. United States*, 631 F.3d 1268, 1275 (Fed. Cir. 2011).

*property interest Sarasota County obtained by reason of the Board's invocation of 1247(d).*

*Accordingly, we ask this Court to determine, among other things, the lawfulness of Sarasota County's actions and threatened actions, the lawfulness of Sarasota County's definition of the taking by the federal government, to quiet title, to enjoin Sarasota County from requiring landowners to remove or demolish existing improvements on their land, to enjoin Sarasota County from removing or demolishing any improvement on any owner's land until it is finally determined that it has the authority to do so, and order Sarasota County to compensate owners for anything Sarasota County has taken. We also ask this Court to determine the respective interest in the right-of-way land held by the federal Surface Transportation Board, Sarasota County and each landowner.*

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, 1343(a)(4), 1346(f), and 1361. This action arises under the Constitution and laws of the United States as well as the Constitution and laws of the State of Florida.

2.     This action requests declaratory and injunctive relief under Sections 2201 and 2202, and in accord with Federal Rules of Civil Procedure 57 and 65.

3.     These landowners seek a declaratory judgment and quiet title relief against the federal government and Sarasota County arising from violations of the Constitution and laws of the United States, as well as injunctive relief and damages against Sarasota County, Florida for redress of federal and state law violations as provided by 42 U.S.C. 1983.

4.     Federal law grants this Court supplemental jurisdiction under 28 U.S.C. 1367 to issue an order granting these owners relief under state law. The owners' state law claims against Sarasota County include Fla. Const. Art. X, § 6, as implemented by Chapters 73 and 74 of the Florida Statutes and the owners' federal rights include those rights guaranteed by the

Fifth Amendment to the Constitution and federal law including the Fifth Amendment and the Uniform Relocation Act.

5.  Venue is appropriate in this Court under 28 U.S.C. 1391(b), because a substantial part of the events or omissions giving rise to the claims in this district, and because Sarasota County is in this district.

6.  The landowners seek a declaration that defines the nature, scope and limits of the rail-trail corridor easement the federal Surface Transportation Board when the Board invoked section 8(d) of the federal Trails Act.   This federal statute and the Board's order also defines the nature and extent of Sarasota County's rights as the trailuser to use these owners' land.

7.  The landowners have standing because injury they face is a constitutional civil rights violation visited upon them by the federal Surface Transportation Board and Sarasota County.

## THE GOVERNING LAW

8.  The following provisions of the United States Constitution, the United States Code and Florida law govern this dispute.

    a.  **The Fifth Amendment to the United States Constitution** provides, "No person shall…be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the federal government directly and to all state and local governmental entities through its incorporation into the 14th Amendment. *Macdonald v. Cnty. of Yolo*, 477 U.S. 340, 342 n.1 (1986).

    b.  **Section 8(d) of the National Trails System Act** provides, "interim use [of abandoned railroad right-of-way easements for public recreation] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad

purposes." The Board's invocation of section 8(d) imposes a new and different easement across the owners' land. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) (*Preseault I*); *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (*Preseault II*); *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004); *Trevarton v. South Dakota*, 817 F.3d 1081, 1086-87 (8th Cir. 2016).

c. **The Uniform Relocation Assistance and Real Property Acquisition Policies Act** of 1970 (URA), 42 U.S.C. § 4654(c) requires the federal government to reimburse these owners the "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding." The URA also requires the federal government or any state or municipal government using federal funds (such as Sarasota County) to guarantee the rights afforded by the URA.

d. **Section 4622(a) of the Uniform Relocation Assistance Act (URA)** provides the federal government must also pay other expenses and costs an owner incurs including: "(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property; (2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation … (3) actual reasonable expenses in searching for a replacement business or farm."

e. **Section 4622(d) of the URA** provides the federal government must also pay the costs of relocating "utility facilities" including: "(i) any electric, gas, water, steam power, or materials transmission or distribution system; (ii) any transportation system; (iii) any communications system (including cable television); and (iv) any fixtures, equipment, or other property associated with the operation, maintenance, or repair of any such system."

f. **The Florida Constitution,** including Fla. Const. Art. X, § 6, as implemented by Chapters 73 and 74 of the Florida Statutes, which states that "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."

g. **The federal Quiet Title Act**, 28 U.S.C. 2409a, provides in relevant part that "[t]he United States may be named as a party defendant in

a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . .”

h. **28 U.S.C. 2201**, provides “any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.”

i. **Rule 23 of the Federal Rules of Civil Procedure**, provides for class action lawsuits, stating that “[o]ne or more members of a class may sue . . . as representative parties on behalf of all members” if numerosity, commonality, typicality and adequacy requirements are met.

j. **42 U.S.C. 1983**, provides individuals the right to sue governments and their employees and others acting “under color of state law” for civil rights violations. This federal law grants these owners the right to sue Sarasota County.

k. The **Civil Rights Attorney Fee Act**, 42 U.S.C. 1988, grants this court authority to order Sarasota County to reimburse these owners’ reasonable legal fees and litigation expenses.

## BACKGROUND

**A.**    **The railroad right-of-way easement between Sarasota and Venice.**

9.    In the early 1900s, much of the land in what is now Sarasota County, Florida was owned by Bertha Palmer and members of her family, including her son Adrian Honore.[10] The Palmer family was from Chicago and Bertha Palmer’s husband, Potter Palmer, founded the retail chain that became Marshall Fields. After his death and the Chicago Fire, Bertha Palmer came to Sarasota, Florida. At the time Sarasota was turpentine farms and fishing villages. Bertha Palmer and her family wanted to develop and promote Sarasota as a tourist destination for residents from Chicago and other northern locations to escape cold winters.

---

[10] What is now Sarasota County was originally part of Manatee County.

10.     To facilitate development of Sarasota and Venice, the Palmer family wanted the Seaboard Air Line Railway to build a railroad line between Sarasota and Venice. At the time, there was no interstate highway system and there were no airlines; the only way to bring residents from northern cities like Chicago to Florida was by railroad.

11.     In November 1910 Adrian Honore, the predecessor-in-interest to these present-day landowners, granted Seaboard a right-of-way easement across his land allowing Seaboard to build and operate a railway line from Sarasota to Venice. A copy of the right-of-way easement Adrian Honore granted Seaboard Air Line Railway is attached as **Exhibit 1.** Honore's easement provided, "if at any time [following the construction of the railroad] the said [railroad] shall abandon said land for railroad purposes [,] the above described pieces and parcels of land shall ipso facto revert to and again become the property of the undersigned, his heirs, administrators and assigns." *See also Rogers v. United States*, 90 Fed. Cl. 418, 430-31 (2009) ("the Honore conveyance placed an explicit limitation on the use of the property interest conveyed and contained an unequivocal stipulation that title would revert to the grantor upon discontinuance of the use of the parcel for its intended railroad purpose."). Other landowners granted similar railroad right-of-way easements to Seaboard Air Line Railway.

12.     Not long after Adrian Honore granted Seaboard an easement across his land, the newly-created federal Interstate Commerce Commission inventoried railroad companies' assets and mapped railway lines. These federally-created maps are called "Valuation Maps."[11]

---

[11] *See* Valuation Act of 1913, 37 Stat. 701, ch. 92 (March 1, 1913). The Valuation Maps are not land title records and are not recorded in the state land title office. But these "Val Maps" do provide a helpful survey of the property interest in railroad corridors.

The valuation maps and accompanying schedules are now kept by the National Archives and Records Administration.

13.    Adrian Honore and the other landowners granted the Seaboard Railway only a right-of-way easement to operate a railroad across the strip of land. Under the explicit terms of the original easement and Florida law, when Seaboard or its successor railroad no longer operated trains across this strip of land, the easement terminated and these landowners held unencumbered title to the land and enjoyed the exclusive right to use and possess the land and to exclude others from their land. Chief Justice Roberts explained in *Brandt Trust v. United States*, 572 U.S.93, 105 (2014) that "[w]hen the [railroad] abandoned the right of way…, the easement … terminated. [The owner's] land become[s] unburdened of the easement, conferring on him the same full rights over the [right-of-way land] as he enjoy[s] over the rest of [his land]."

14.    The Supreme Court also held that the right to exclude others from an owner's land is an essential feature of private property. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831 (1987) ("We have repeatedly held that, as to property reserved by its owner for private use, 'the right to exclude [others is] "one of the most essential sticks in the bundle of rights that are commonly characterized as property."'") (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982) and *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)); *Leo Sheep Co. v. United States*, 440 U.S. 668, 685 (1979) (landowner "is entitled to the complete and exclusive enjoyment of [land]" and courts are "unwilling to upset settled expectations to accommodate some ill-defined power to construct public thoroughfares without compensation") *see also Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2170 (2019) (the

Supreme Court has "long recognized that property owners may bring Fifth Amendment claims . . . as soon as their property has been taken.").

**B.    Seaboard's successor railroads abandoned the railroad right-of-way and the original easement terminated.**

15.    The Seaboard Railway did not survive but went through a series of bankruptcies, and Seaboard's assets (including its interest in the Sarasota-to-Venice right-of-way easement) wound up in the hands of successor railroads.   The right-of-way easement Adrian Honore originally granted Seaboard was ultimately transferred to CSX Transportation, Inc. (CSXT) which, in turn, leased the railway line to Seminole Gulf Railway, L.P. (Seminole Gulf).

16.    By 2002, CSXT and Seminole Gulf no longer operated a railroad over this land and neither Seminole Gulf nor CSXT had any need for this right-of-way nor did Seminole Gulf or CSXT intend to operate a railroad across this land now or in the indefinite future.

17.    In March 2019, Seminole Gulf requested the Surface Transportation Board to allow it to abandon a 7.68-mile segment of rail line between milepost 890.29 on the north side of Ashton Road and milepost SW 884.70, and between milepost 930.30 and milepost 928.21 on the north side of State Highway 780 (Fruitville Road).   *See* **Exhibit 2** Abandonment Petition, STB Docket No. AB-400 (Sub-No. 7X) (March 8, 2019).

18.    Seminole Gulf told the Board that "No local or overhead traffic has moved over the Subject Line since prior to 2007, a period of more than ten years."   Notice of Exempt Abandonment, STB Docket No. AB 400 (Sub No. 7X) (March 8, 2019), p. 3.   Seminole Gulf's statements to the Board are made under penalty of perjury.

19.     Seminole Gulf and CSXT had previously made similar representations to the Board concerning the southern segments of the right-of-way between Sarasota and Venice.

20.     After the railroads told the Board that they (Seminole Gulf and CSXT) wanted to abandon the railway line, Sarasota County (which is not a railroad) asked the Board to invoke section 8(d) of the Trails Act and authorize Seminole Gulf and CSXT to transfer the otherwise abandoned right-of-way to Sarasota County so that Sarasota County could build a public recreational trail across these owners' land.  *See* **Exhibit 3** (STB Docket No. AB 400 (Sub No. 7X)).

21.     Seminole Gulf and CSXT had no right to transfer or sell any interest in these owners' land to Sarasota County. A railroad can only transfer its interest to another *railroad* and has no interest it can transfer to a non-railroad. *See E. Alabama Ry. Co. v. Doe*, 114 U.S. 340, 354 (1885); *see also Monroe Cnty. Comm'n v. A.A. Nettles, Sr. Props*., No. 1170738, 2019 Ala. LEXIS 37, at *14 (Apr. 26, 2019) (deed from railroad "conveyed nothing to the Commission because the railroad, at the time of conveyance, had nothing to transfer. In other words, the railroad's inaction in failing to use its right-of-way terminated the right-way-of, divesting it of any further interest in the property."), *cert. denied*, 2020 U.S. LEXIS 203 (U.S. Jan. 13, 2020).

22.     Last May (in 2019) the federal Surface Transportation Board issued an order called a Notice of Interim Trail Use or Abandonment (NITU) invoking section 8(d) of the Trails Act.  *See* **Exhibit 4.**  The Board's order provided that "Use of the right-of-way for trail purposes is subject to possible future reconstruction and reactivation of the right-of-way for rail service" governed by the Board's jurisdiction.  *Id.* at 2.

23.     Were it not for the Board's invocation of section 8(d) of the federal Trails Act, Seminole Gulf and CSXT had no interest in the land under the former railway line and had nothing they could sell or transfer to Sarasota County, the Public Trust for Land or anyone else.  See *Brandt Trust, E. Alabama Ry. Co., Monroe Cnty. Comm'n,* and *Leo Sheep, supra.*

24.     This same Seaboard railroad right-of-way was the subject of the prior Trails Act litigation involving the southern section of the Legacy Trail.  *See Rogers v. United States,* 90 Fed. Cl. 418 (2009); *Childers v. United States,* 116 Fed. Cl. 486, 497 (2014) and *McCann Holdings v. United States,* 111 Fed. Cl. 608, 614 (2013).  The litigation over the southern segments of the right-of-way involved an earlier April 2004 order of the Board invoking section 8(d) to take a twelve and one-half mile-long segment of the Sarasota-to-Venice Legacy Trail corridor south of the segment that is the subject of this litigation.

25.     The first segment of the Legacy Trail, the southern segment runs from Venice to the Culverhouse Nature Park just south of Sawyer Loop Road.  The owners of the land taken for this southern segment sued the federal government and were paid in the *Rogers, McCann* and *Childers* litigation presided over by Judge Williams of the Court of Federal Claims.  The second segment extends north of the Culverhouse Park to Ashton Road.  The owners of land taken for the second segment of Legacy Trail are parties in *Cheshire Hunt v. United States.* Judge Wheeler is hearing these owners' claims.  The land taken for the northern extension of the Legacy Trail – which is the subject of this litigation – runs about six miles north of Ashton Road to Fruitville Road.  The owners of land taken for this northern extension include those owners in the *4023 Sawyer Road I, LLC v. United States* which was originally assigned to Judge Williams but has now been transferred to Judge Wheeler.

26. An important point which Plaintiffs will revisit below is the limited jurisdiction of the Court of Federal Claims. That court has no jurisdiction over Sarasota County and has no authority to enter injunctions or declaratory relief or to decide a federal quiet title action. The Court of Federal Claims is not an Article III court and its jurisdiction is limited to determining and awarding money damages. *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 382 (2016); *Caldwell v. United States*, No. 16-357C, 2016 U.S. Claims LEXIS 238, at *19 (Fed. Cl. Mar. 25, 2016).

27. In apparent reliance upon the Board's order invoking Section 8(d), Sarasota County sent to almost 300 Sarasota County landowners letters claiming their existing improvements (pools, septic fields, fences, sheds and other structures) "encroached" upon property Sarasota County claimed to own. Sarasota County also threatened to enter these owners' property, remove existing improvements such as swimming pools, fences, sheds and other improvements, dump the debris on the owners' land, and issue a citation demanding these owners reimburse Sarasota County for the cost Sarasota County expended demolishing these lawfully constructed improvements from these owners' private property.

28. Some (Sarasota County, the Trust for Public Land, and the Board) claim that by reason of the Board invoking section 1247(d) of the Trails Act, the federal Surface Transportation Board retains jurisdiction over the new federal rail-trail corridor but has authorized Sarasota County to construct and operate a public recreational trail across these owners' land.

29. Last year Sarasota County adopted a $65 million bond issue to fund the cost of building the Legacy Trail north of Culverhouse Park. This bond issue does not include funds

to compensate the owners whose land was taken for the Legacy Trail. The compensation for the private property taken for the Legacy Trail must be paid by the federal government. *See Preseault II*, 100 F.3d at 1532 ("[W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government."). To the extent Sarasota County takes an interest in these owners' property that is greater than that interest the Board took, Sarasota County and not the federal government must pay the owners for what it took.

30. Sarasota County and the Trust for Public Land appraised this 7.7 mile-long corridor as worth between $43 million and $45 million. *See* **Exhibits 5 and 6.** This is more than $8.20 per square foot and more than $528 per front foot and does not include compensation for diminution of value to the landowners' remaining land.

31. *Rogers* involved a segment of this same railroad right-of-way Adrian Honore granted Seaboard Railway in 1910. In *Rogers*, 90 Fed. Cl. at 430-31, the Court of Federal Claims held,

> [T]he words of the Honore conveyance indicate that the parties intended to create an easement. The Honore conveyance transferred a "right of way for railroad purposes over and across the...described parcels of land." Further, like the deed in *Irv Enterprises*, the Honore conveyance placed an explicit limitation on the use of the property interest conveyed and contained an unequivocal stipulation that title would revert to the grantor upon discontinuance of the use of the parcel for its intended railroad purpose. *See Irv Enters*. [*v. Atl. Island Civic Ass'n* 90 So.2d 607, 609 (Fla.1956)]. The Honore conveyance has no language that suggests that title to described parcel was conveyed outright, i.e. that the transfer was made "in fee simple."

> Because Seaboard obtained an easement in the Honore conveyance, successors to the Honore grantees retained fee title to the underlying land encumbered by the easement. Under Florida law, title to the land bordering an easement extends to the centerline of the easement. *Smith v. Horn*, 70 Fla. 484, 70 So. 435, 436 (1915).

32.     The *Rogers* court additionally held, at 90 Fed. Cl. 432,

Like the easements before the *Preseault II* Court, the Honore conveyance is an express easement, and the extent of the easement created by that conveyance is fixed. *Id.* (quoting 5 *Restatement of Property* § 482 (1944)). In Florida, the scope of an easement does not increase with time, and accordingly, the "burden of a right of way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of initial acquisition." *Crutchfield v. F.A. Sebring Realty Co*., 69 So.2d 328, 330 (Fla. 1954).

Here, as in *Preseault II*, the use of the right-of-way as a public trail while preserving the right-of-way for future railroad activity was not something contemplated by the original parties to the Honore conveyance back in 1910. As the Federal Circuit explained, when examining a right-of-way acquired in 1899, the usage of a right-of-way as a recreational trail is "clearly different" from the usage of the same parcel of land as a railroad corridor. *Preseault II*, 100 F.3d at 1542. As such, the terms of the Honore easement were limited to use for railroad purposes and did not contemplate use for public trails. Thus, the governmental action converting the railroad right-of-way to a public trail right-of-way imposed a new easement on the landowners and effected a Fifth Amendment taking of their property. *Id*. at 1550.

33.     In *Preseault II* the Federal Circuit, sitting *en banc*, held the federal government is constitutionally obligated to pay landowners when the Board invokes section 8(d) of the Trails Act. "[W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government." 100 F.3d at 1532; *see also Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2172 (2019) ("because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time.").

34.     The Federal Circuit held the federal government's liability in a Trails Act taking is established under a three-point analysis. *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault II*, 100 F.3d at 1533):

(1) [W]ho owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;

(2) [I]f the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and

(3) [E]ven if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).[12]

35.     In the *Rogers* litigation, this Court held that the owners' predecessor-in-interest granted Seaboard an easement to use the strip of land for the operation of a railroad and that when Seaboard and its successor railroads no longer ran trains over the strip of land for operation of a railway line, the easement terminated. *Rogers v. United States*, 90 Fed. Cl. 418, 432 (2009) ("the terms of the Honore easement were limited to use for railroad purposes and did not contemplate use for public trails. Thus, the governmental action converting the railroad right-of-way to a public trail right-of-way imposed a new easement on the landowners and effected a Fifth Amendment taking of their property.")

36.     The owners bringing this case are in *exactly* the same situation as those owners in the *Rogers* litigation.  The federal government's liability (and its constitutional obligation to justly compensate landowners) has already been established.  The outstanding issue to be determined is the specific compensation due each landowner.

---

[12] The third point in this analysis arises only when the right-of-way easement originally granted the railroad included a right for a non-railroad to use the land for a public recreational trail. This is not applicable here because, *inter alia,* Adrian Honore's easement explicitly prohibited any use other than the operation of a railway. *Rogers v. United States*, 90 Fed. Cl. 418, 432 (2009)

**C.**     **Sarasota County now demands that owners remove lawfully constructed improvements from the owners' private property.**

37.    In apparent reliance upon the Board's order invoking section 8(d) of the federal Trails Act, Sarasota County placed upon landowners' property a series of orders, door hangers, signs and letters demanding the owners remove any "encroachments" from their land. Sarasota County now claims to "own" this land by reason of the Board's order. *See* **Exhibit 7** (Form Letters from Hayley A. Baldinelli and Sarasota County door hangers). Sarasota County has unlawfully entered these owners' land and placed a notice on each owner's front door demanding the owner remove an improvement from the owner's property.

38.    The "encroachments" Sarasota County demanded the owners remove from their land included lawfully-permitted in-ground swimming pools, fences, sheds, septic drain fields, warehouses and other improvements that existed on these owners' private property for years and, in many cases, decades. To the extent Sarasota County takes an interest in these owners' property that is greater than that interest the Surface Transportation Board took, Sarasota County is exercising its eminent domain power under color of state law and must pay the owners "full compensation" under Fla. Const. Art. X, § 6. Sarasota County has recently escalated its threats to landowners by placing signs on their fences and sheds and other "encroachments" stating that landowners have until March 30, 2020 to remove them from "county-owned property" or else Sarasota County's contractor will remove them on its own. *See* **Exhibit 8**.

39.    Contractors for Sarasota County have prepared a "Legacy Trail Early Work Release Package" which details the trail construction project and contains a six-page

spreadsheet of "Encroachments To Be Removed" which lists property owners' fences, pools and other private property Sarasota County intends to remove. *See* **Exhibit 21,** pp. 6-11.

40.     Sarasota County has no legal right to enter these owners' land. Sarasota County has no right to demand these owners remove any "encroachments" from the owners' private property.

## THE PARTIES

A.     **The Sarasota County Landowners.**

41.     The named Plaintiffs are individuals, families and businesses who are the present-day owners of land in Sarasota County, Florida. The federal government took these owners' land for the northern extension of the Legacy Trail. Each of these owners holds title to the fee estate in land subject to the Board's order invoking section 8(d) of the Trails Act and subject to Sarasota County's demand that they remove some existing improvement from the owner's land.

### i.     **William and Brooke Grames (The Grames Family)**

42.     The Grames family bought their land on September 30, 1999 by that deed recorded in the Sarasota Recorder of Deed's office as instrument #1999135985. A copy of this deed is attached as **Exhibit 9**.

43.     The Grames family's property is identified by Sarasota County as parcel #0089-01-0055. A copy of the tax record for this property is attached as **Exhibit 10**.

44.     The Grames family owns the land under the former Seaboard railroad right-of-way. By reason of the Board's invocation of section 8(d) of the Trails Act, the Grames family's land is now subject to an easement for public recreation and railbanking.

45.     The Grames family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act.

**ii.     Craig B. and Cynthia D. Dickie (The Dickie Family)**

46.     The Dickie family bought their land on January 26, 1978 by that deed recorded in the Sarasota Recorder of Deed's office in Bk 1220, Pg 860.  A copy of this deed is attached as **Exhibit 11**.

47.     The Dickie family's property is identified by Sarasota County as parcel #0053-04-0006.  A copy of the tax record for this property is attached as **Exhibit 12**.

48.     The Dickie family owns the land under the former Seaboard railroad right-of-way. By reason of the Board's invocation of section 8(d) of the Trails Act, the Dickie family's land is now subject to an easement for public recreation and railbanking.

49.     The Dickie family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act.

**iii.     Judy H. Johnson (Johnson)**

50.     Johnson bought her land on January 19, 1998 by that deed recorded in the Sarasota Recorder of Deed's office in Bk 3058, Pg 933.  A copy of this deed is attached as **Exhibit 13**.

51.     Johnson's property is identified by Sarasota County as parcel #0089-16-0006. A copy of the tax record for this property is attached as **Exhibit 14.**

52.     Johnson owns the land under the former Seaboard railroad right-of-way. By reason of the Board's invocation of section 8(d) of the Trails Act, Johnson's land is now subject to an easement for public recreation and railbanking.

53. Johnson owned her property in May 2019 when the Board invoked section 8(d) of the federal Trails Act.

### iv. James and Diane Kostan (The Kostan Family)

54. The Kostan family bought its land on December 16, 2011 by that deed recorded in the Sarasota Recorder of Deed's office as instrument #2011148625. A copy of this deed is attached as **Exhibit 15.**

55. The Kostan family's property is identified by Sarasota County as parcel #0053-14-0002. A copy of the tax record for this property is attached as **Exhibit 16**.

56. The Kostan family owns the land under the former Seaboard railroad right-of-way. By reason of the Board's invocation of section 8(d) of the Trails Act, the Kostan family's land is now subject to an easement for public recreation and railbanking.

57. The Kostan family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act.

### v. Patrick J. and Lisa A. Loyet (The Loyet Family)

58. The Loyet family bought its land on January 30, 2001 by that deed recorded in the Sarasota Recorder of Deed's office as instrument #2001013964. A copy of this deed is attached as **Exhibit 17**.

59. The Loyet family's property is identified by Sarasota County as parcel #0070-15-0037. A copy of the tax record for this property is attached as **Exhibit 18**.

60. The Loyet family owns the land under the former Seaboard railroad right-of-way. By reason of the Board's invocation of section 8(d) of the Trails Act, the Loyet family's land is now subject to an easement for public recreation and railbanking.

61. The Loyet family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act.

**B.    Defendants.**

62. Sarasota County is an entity established by the State of Florida. It succeeded Manatee County, Florida.

63. The Surface Transportation Board is the federal agency charged with the economic regulation of surface transportation, primarily freight rail. The Board is the successor to the Interstate Commerce Commission. ICC Termination Act of 1995, Pub. L. 104–88.

64. Ann D. Begeman, Patrick J. Fuchs and Martin J. Oberman are the currently serving board members of the Surface Transportation Board.

## THE LANDOWNERS BRINGING THIS CLASS ACTION WILL FAITHFULLY REPRESENT THE INTERESTS OF THEIR SIMILARLY-SITUATED NEIGHBORS.

65. A class action is a superior means, and the only practicable means, by which the named landowners and the other similarly-situated putative class members can vindicate constitutional and civil rights.

66. Rules 23(a)(1)-(4) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure provide for this action to be brought as an opt-out class action by the named Sarasota County property owners in their own capacity and on behalf of the unnamed Sarasota County property owners. Rule 23 states, in pertinent part, that "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members" if numerosity, commonality, typicality and adequacy requirements are met.

67. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of the Federal Rules of Civil Procedure and relevant case law. *See Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

68.     The class is composed of the Sarasota County landowners who have filed claims for compensation in the United States Court of Federal Claims and to whom Sarasota County issued demands or threats requiring that the owners remove existing structures or other improvements from their property.

69.     Sarasota County's claims and demands arise from action the Surface Transportation Board took under authority of the federal Trails Act.

**A.     Numerosity**

70.     Federal Rule of Civil Procedure 23(a)(1) provides that the class must be "so numerous that joinder of all members is impracticable."

71.     The class members eligible to participate in this action are so numerous as to make joinder impracticable. This is a countywide class that includes hundreds of Sarasota County landowners whose right to use and possess their private property is at jeopardy.

72.     Sarasota County has sent three hundred property owners a demand that the owner remove "encroachments" from the owner's land. This reflects only a fraction of landowners situated on the proposed trail and with property improvements in the path of the proposed Legacy Trail.

73.     Hundreds of Sarasota County landowners are part of the class and subject to Sarasota County's threatened action to take and demolish their private property. Sarasota County states: "There are 236 total encroachments with some properties having multiple encroachments. Of the 236 total encroachments, there are 89 located within the City of Sarasota." Sarasota County website, "Legacy Trail Encroachments,"

https://www.scgov.net/government/parks-recreation-and-natural-resources/find-a-park/specialty-parks/the-legacy-trail/legacy-trail-encroachments.

74. Sarasota County states that "Encroachments must be removed so construction on this portion of the Legacy Trail may commence in mid-2020." *Id*.

75. The landowners have requested that Sarasota County provide the details of its demand and documents supporting Sarasota County's demand that these owners remove existing improvements. *See* **Exhibit 19**, Letter to Sarasota County Commission. Sarasota County has not yet complied with this request as it is required to do under Florida's Sunshine Act law. Fla. Stat. secs. 286.011 to 286.012 (1991); Fla. Stat. secs. 119.01 to 119.15 (1995).

### B. Commonality

76. Federal Rule of Civil Procedure 23(a)(2) provides that there must be "questions of law or fact common to the class."

77. The relief sought in this class action is common to all class members, and common questions of law and fact exist as to all class members. The named Plaintiff-landowners seek relief concerning whether Sarasota County can force landowners to remove existing improvements from to their property. The representative class members ask this Court to define the interest Sarasota County has to the private property subject to the federal Surface Transportation Board's orders invoking section 8(d) of the federal Trails Act.

78. The named landowners ask this Court to enjoin Sarasota County from threatening landowners whose property is encumbered by this newly-created federal rail-trail corridor until such time as this Court determines the respective interest Sarasota County, the landowners and the Surface Transportation Board have in this land.

79.     The named landowners and the eligible class members are all in the same position—they are subject to an unconstitutional taking, the title to their land is clouded by reason of the Board's order and Sarasota County's demand and they are under an imminent threat that Sarasota County will forcibly enter their land and remove a lawfully constructed existing improvement.   Each named landowner and the putative class members present common questions of fact and law.

C.     **Typicality**

80.     Federal Rules of Civil Procedure 23(a)(3) provides that "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."

81.     The named class members' claims are typical of the putative class members' claims, and they have the same interests in this case as all other class members. Each class member is the subject of the Board's order and has notice from Sarasota County demanding the owner remove existing improvements from the owner's land.

82.      If the named landowners prevail in their claim that Sarasota County and the Board's actions violate their constitutional rights, that ruling will likewise benefit and apply to every other putative class member.

D.     **Adequacy**

83.      Federal Rules of Civil Procedure 23(a)(4) provides that "the representative parties [must] fairly and adequately protect the interests of the class."

84.      The named landowners will adequately represent the class of putative class members because their interests are aligned.

85.     There are no known conflicts of interest among class members, all of whom have a similar interest in vindicating their constitutional rights in the face of the Board's and Sarasota County's taking of their private property and who share a common interest in defining the respective rights and responsibilities of the Surface Transportation Board, Sarasota DCounty and the individual landowners whose private property is now subject to the Board's invocation of the federal Trails Act.

86.     The named plaintiff-landowners are represented by attorneys who have experience in litigating complex civil rights matters in federal court (particularly rails-to-trails cases) and extensive knowledge of both the details of Defendants' scheme and the relevant constitutional and statutory law.   *See* True North website, "Mark F. (Thor) Hearne," https://truenorthlawgroup.com/thor-hearne/; Brigham Property Rights Law Firm website, "Andrew Brigham," http://propertyrights.com/andrew-brigham/.  Hearne represented all Sarasota County landowners whose land was taken for the southern segment of the Legacy Trail. *See* **Exhibit 20,** Thor Hearne bio.

87.     Counsel have devoted substantial time and resources to defending these owners' right to compensation.  The named landowners and their counsel will protect the interest of the putative class members.

**THIS COURT SHOULD ENTER A TEMPORARY RESTRAINING ORDER PREVENTING SARASOTA COUNTY FROM ENTERING THESE OWNERS' LAND AND DESTROYING THESE OWNERS' PROPERTY UNTIL THIS COURT FIRST DETERMINES THE PARTIES RESPECTIVE INTEREST IN THE LAND**

88.     Sarasota County has ordered almost three hundred Sarasota County landowners to remove existing improvements and structures from private property these individuals, families, businesses and churches own. Sarasota County has threatened the owners that, if they

do not remove the improvements and structures, Sarasota County will enter their property and will demolish the existing improvements.

89.     Sarasota County threatens an immediate and imminent action to take, destroy or demolish these owners' private property.

90.     The landowners have no adequate remedy to redress the deprivation of their rights caused by the federal Surface Transportation Board and Sarasota County.

91.     Unless this Court grants relief and enjoins Sarasota County from destroying these owners' private property these landowners and the putative class members will suffer irreparable injury.

92.     Plaintiffs have brought an action for compensation in the United States Court of Federal Claims as provided by the Tucker Act (28 U.S.C. 1491) but the Court of Federal Claims does not have jurisdiction to order injunctive relief. *Caldwell v. United States*, No. 16-357C, 2016 U.S. Claims LEXIS 238, at *19 (Fed. Cl. Mar. 25, 2016).

## CAUSES OF ACTION

## COUNT I

*Declaratory Judgment*
*Against Sarasota County and the federal Surface Transportation Board*

93.     Florida law provides for declaratory judgment and equitable relief pursuant to Chapter 86, Florida Statutes.

94.     As set forth below, the owners allege a *bona fide*, actual, present, and practical need for a declaration of rights of the parties.

95.     A controversy has arisen between the owners and Sarasota County together with the federal Surface Transportation Board as alleged herein; and, as a result, there is doubt as to the rights and status of the parties.

96.     On May 14, 2019, when it invoked Section 8(d) of the Trails Act, the federal government, through the Surface Transportation Board, took private property from Sarasota County landowners by encumbering these owners' land with an easement for public recreation and so-called railbanking.   The Just Compensation Clause of the Fifth Amendment of our Constitution requires the federal government to pay these owners for that property the federal government took. *See Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990); *Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) (en banc).

97.     Congress amended the Trails Act in 1983 for the explicit purpose of authorizing the Interstate Commerce Commission (now the Board) to take an owner's state-law right to unencumbered title and possession of the owner's land.  Congress intended section 8(d), when invoked, to impose new and different easements upon the owner's land and to perpetuate the Board's jurisdiction over the owner's land.[13]

98.     But for the Board invoking section 8(d) of the Trails Act, these Florida landowners would have unencumbered title to and the exclusive right to possess their property free of any easement for recreational trail use or railbanking. *Nollan v. California Coastal*

---

[13]  See *Preseault I, Preseault II, Towes* and *Trevarton v. South Dakota,* 817 F.3d 1081, 1087 (8th Cir. 2016) (holding the Board's invocation of section 8(d) imposes a new and different easement upon the owner's land); *see also Citizens Against Rails-to-Trails v. Surface Transp. Bd*., 267 F.3d 1144, 1149 (D.C. Cir. 2001). and *Nat'l Wildlife Found. v. Interstate Commerce Comm'n*, 850 F.2d 694, 697-98 (D.C. Cir. 1988) (explaining that Congress intended to extinguish owners' state-law property rights).

*Comm'n*, 483 U.S. 825, 831 (1987) ("We have repeatedly held that, as to property reserved by its owner for private use, 'the right to exclude [others is] 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'") (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982) and *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)); *Leo Sheep Co. v. United States*, 440 U.S. 668, 685, 99 S. Ct. 1403, 1412 (1979) (landowner "is entitled to the complete and exclusive enjoyment of [land]").

99. When the Board issued its order invoking section 8(d) of the Trails Act on May 14, 2019, the federal government became constitutionally obligated to pay these owners just compensation.[14] *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368 (2006); *Illig v. United States,* 274 Fed. Appx. 883 (2008), *cert. denied* 557 U.S. 935 (2009); *see also* Solicitor General Kagan's Brief for the United States in Opposition to Petition of Writ of Certiorari, *Illig v. United States,* 2009 WL 1526939 ("When the [order invoking section 8(d) of the Trails Act] is issued, all the events have occurred that entitle the claimant to institute an action based on federal-law interference with reversionary interests, and any takings claim premised on such interference therefore accrues on that date.").

100. In *Caldwell, Barclay, Illig, Ladd* and *Navajo Nation* the Federal Circuit held that an owner's right to compensation in a Trails Act taking arises when the Board first issues its order invoking section 8(d). Specifically, Judge Dyk of the Federal Circuit wrote:

The taking, if any, when a railroad right-of-way is converted to interim trail

---

[14] The Board's order is a Notice of Interim Trail Use or Abandonment (NITU). The Board may also invoke section 8(d) by issuing a Certificate of Interim Trail Use or Abandonment (CITU).

use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting. Abandonment is suspended and the reversionary interest is blocked "when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)" of the Trails Act. We concluded that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way. Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.

*Barclay*, 443 F.3d at 1373.[15]

101.   These Sarasota, Florida landowners' right to be justly compensated for that property the federal government took from them does not depend upon whether (or when) the railroad and a trail-user (here, Sarasota County) reach some agreement, transfer the right-of-way or when the trail-user builds a public recreational trail across these owners' land. The federal government's liability for a Fifth Amendment taking is defined by what the owner lost, not what the taker gained. *See* Justice Holmes decision for a unanimous Supreme Court in *Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, (1910) ("And the question is, What has the owner lost? Not, What has the taker gained?"); *see also First English Evangelical Lutheran Church v. Los Angeles,* 482 U.S. 304, 321-22 (1987) ("a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change") (quoting *Pennsylvania Coal,* 260 U.S. at 416); *Leo Sheep Co. v. United States*, 440 U.S. 668, 685 (1979) ("this Court has traditionally recognized the special need for certainty and predictability where land titles are concerned, and we are unwilling to upset settled expectations to accommodate some ill-defined

---

[15]  See also *Ladd I*, 630 F.3d at 1020; *Ladd II*, 713 F.3d at 652.

power to construct public thoroughfares without compensation"); *Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2168 (2019) (a "property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under §1983 at that time.").

102.    The Board's invocation of section 8(d) granted Sarasota County the right to use these owners' land for a public recreational trail and the responsibility to maintain this corridor for a possible future railroad line.

103.    As a result of the Board's invocation of section 8(d) of the Federal Trails Act, Sarasota County now claims it is the "owner" of these owners' land and by dint of the Board's order invoking the Federal Trails Act, has ordered almost three hundred landowners to remove structures and improvements, including in-ground swimming pools, fences, sheds, septic systems and other lawful improvements, located within the 100-foot-wide right of way the federal government took. These improvements pre-existed the federal government's imposition of the new rail-trail corridor easement.

104.    The federal government has the power of eminent domain and can take private property without the owner's consent.  But the exercise of the power of eminent domain is conditioned upon the constitutional obligation of justly compensating the owner.  *See Preseault I, Armstrong v. United States,* 364 U.S. 40, 49 (1960)*, Monongahela Nav. Co. v. United States*, 148 U.S. 312, 324 (1983), among other cases.

105.    Sarasota County also possesses the power of eminent domain and may forcibly take private property from landowners without the owner's consent.  But to exercise this power, Sarasota County must comply with Florida constitution and statutes.  In this case

Sarasota County has not exercised any eminent domain authority over these owners' property but is relying upon whatever authority Sarasota County received by reason of the federal Surface Transportation Board invoking section 8(d) of the federal Trails Act.

106.    Without citing any authority for its right to do so, Sarasota County has ordered almost three hundred landowners to remove improvements and structures from their private property and has threatened the owners that, if they do not remove the improvements and structures, Sarasota County will enter their property and will do so.  *See* **Exhibit** 7; **Exhibit 8**.

107.    If Sarasota County is ordering these removals and demolitions pursuant to federal authority derived from the Board's invocation of section 8(d) of the federal Trails Act, it should say so and demonstrate to this Court the source and scope of that federal authority If Sarasota County is ordering the removal and demolition pursuant to its power of eminent domain under the laws of the State of Florida, it should say so and demonstrate to this Court the source and content of that authority and Sarasota County should comply with the Florida Constitution governing the condemnation of private property as set forth in Fla. Const. Art. X, § 6, as implemented by Chapters 73 and 74 of the Florida Statutes.

108.    Sarasota County possesses no legal authority to order the removal and demolition of these improvements from these owners' land.  Unless and until it is affirmatively declared that Sarasota County has such authority, this Court should enjoin Sarasota County from taking any action to remove or demolish any existing improvement on any of these owners' private property. Neither Sarasota County nor the federal government has paid these owners anything, nor has Sarasota County or the federal government offered to pay any owner anything for that property the government has taken.  The United States Constitution and the

Florida constitution require the government to pay an owner when the government takes the owner's private property.

109.    Sarasota County is limited to the quantity and quality of estate contemplated at the time of the easement's creation when the Surface Transportation Board invoked Section 8(d) of the Trails Act. *See Canal Authority v. Miller*, 243 So.2d 131 (Fla. 1970). Sarasota County may not expand or otherwise increase the burden upon the servient estate to any greater extent than contemplated at the time of the easement's creation when the Surface Transportation Board invoked Section 8(d) of the Trails Act. *See Crutchfield v. F.A. Sebring Realty, Co.,* 69 So.2d 328 (Fla. 1954); *see also Trailer Ranch v. City of Pompano Beach,* 500 So. 2d 503 (Fla. 1986).

110.    This Court should "declare the rights and other legal relations" of the landowners, Sarasota County and the federal government Surface Transportation Board regarding these owners' private property. This declaration should specify the physical dimensions of the rail-trail right-of-way easement established under the federal Trails Act and Sarasota County's right to use this land.

**COUNT II**

*Real Property Quiet Title Action*
*Against All Defendants*

111.     Title 28, Section 2409a of the United States Code provides, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . ."

112.     The new rail-trail easement the federal government imposed across these Sarasota County landowners' property clouds and impairs these owners' title to their property and takes from them the property interests these owners have under Florida law and the terms of the original easements.

113.     Plaintiffs ask this Court to resolve this matter and quiet title to these owners' land holding that Sarasota County does not possess any authority to demand these owners remove or demolish their private property located upon their private property.

**COUNT III**

*Injunctive Relief*
*Pursuant to 42 U.S.C. 1983*
*Against Sarasota County*

114.     Title 28, Section 2202, provides this Court has authority to enter declaratory judgment.  "[F]urther necessary or proper relief based on a declaratory judgment or decree may be granted . . ."  This includes injunctive relief to enforce the declaratory judgment or quiet title decree sought herein.

115.     These landowners have no adequate remedy at law and request this Court to enter an equitable declaratory judgment as provide by Section 2202.

116.    Plaintiffs ask this Court enjoin Sarasota County from ordering, threatening or physically removing or destroying any improvements and structures that supposedly "encroach" upon the easement established by the Surface Transportation Board. This preliminary injunction should remain until this Court enters final judgment determining the parties' respective right to use and possess the land subject to the Board's order invoking the federal Trails Act.

117.    Immediate and preliminary injunctive relief should be granted because there is a substantial likelihood these landowners will prevail on the merits.

118.    If immediate and preliminary injunctive relief is not granted, these Florida landowners will suffer irreparable harm.

119.    The threatened injury to the landowners outweighs any potential harm to the federal government or Sarasota County.

120.    The injunction and relief these landowners request (individually and on behalf of the putative class members) is not adverse to the public interest.

**COUNT IV**

*Just Compensation Under The Fifth Amendment of the United States Constitution*
*Pursuant to 42 U.S.C. 1983*
*Against Sarasota County*

121.    The Fifth Amendment requires the government to pay an owner from whom the government takes private property.  "Just compensation" includes the full fair market value of the property the government took which includes any "severance damages" and interest on compensation for the government's delay in rendering the owner compensation.

122.    "The compensation to which the owner is entitled is the full and perfect equivalent of the property taken.  It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken.  He is entitled to the damages inflicted by the taking."  *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299 (1923); *see also Miller v. United States*, 620 F.2d 712 (Ct. Cl. 1980)*, Armstrong v. United States,* 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."); *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 324 (1983) ("the right to compensation is an incident to the exercise of that power [of eminent domain]; that the one is so inseparably connected with the other that they may be said to exist, not as separate and distinct principles, but as parts of one and the same principle.")*.*

123.    The government's obligation to justly compensate the owner begins on the date the owner's property was taken.  In *Knick v. Scott Township*, 139 S.Ct. 2162, 2170 (2019), the Supreme Court declared, "because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."  The Supreme Court continued and held that it has "long recognized that property owners may bring Fifth Amendment claims…as soon as their property has been taken." *Id.* at 2172; *see also First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 318 (1987) (noting Justice Brennan's dissent in *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 657 (1981)),

124. The interest the federal government must reimburse these owners for the federal government's delay in paying them is calculated at the Moody's Aaa rate from May 14, 2019 until the United States Treasury actually pays each owner. *See Miller v. United States*, 620 F.2d 712 (Ct. Cl. 1980); *Pitcairn v. United States*, 547 F.2d 1106 (Ct. Cl. 1976); *Tektronix, Inc. v. United States*, 575 F.2d 832 (Ct. Cl. 1978), *cert. denied*, 439 U.S. 1048; and *Georgia Pacific v. United States*, 640 F.2d 328 (Ct. Cl. 1980); *Miller v. United States*, Court of Federal Claims No. 03-2489L (Order of August 22, 2006), at *2; *Biery v. United States*, Court of Federal Claims Nos. 07-693L & 07-0675L, 2012 WL 5914521, at *4 (Fed. Cl. Nov. 27, 2012); *Love Terminal Partners v. United States*, 126 Fed. Cl. 389 (2016); and *Sears v. United States*, 124 Fed. Cl. 730 (2016).

125. The interest Sarasota County must reimburse these owners is calculated at the statutory rate provided by Florida law. *West v. Sunbelt Enters.*, 530 So. 2d 433, 436 (Fla. Dist. Ct. App. 1988); Fla. Stat. Ann. § 55.03.

## COUNT V

*Damages Under The Uniform Relocation Act*
*Against Sarasota County*

126. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4654(c) and 4628 (URA) requires Sarasota County to reimburse these owners all of the "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

127. Section 4622(a) of the URA provides Sarasota County must also pay other expenses and costs an owner incurs including: "(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property; (2) actual direct losses

of tangible personal property as a result of moving or discontinuing a business or farm operation … (3) actual reasonable expenses in searching or a replacement business or farm."

128.	Section 4622(d) of the URA provides Sarasota County must also pay the costs of relocating "utility facilities" including: "(i) any electric, gas, water, steam power, or materials transmission or distribution system; (ii) any transportation system; (iii) any communication system (including cable television); and (iv) any fixtures, equipment, or other property associated with the operation, maintenance, or repair of any such system."

129.	The URA applies to state and local governments involving projects with federal funds and federal resources.  42 U.S.C. 4632.

130.	Sarasota County has accepted federal funds to build the Legacy Trail and must comply with the provisions of the URA including those provisions requiring the owner to be reimbursed litigation expenses and relocation expenses.

## COUNT VI

*Full Compensation Under Article X, Sec. 6 of the Constitution of the State of Florida Against Sarasota County (Supplemental State Claim)*

131.	As alternative or supplemental to Count IV above concerning "just compensation" under the Fifth Amendment to the United States Constitution and Count V above concerning damages under the Uniform Relocation Act, the owners also set forth a cause of action for "full compensation" under Article X, § 6 of the Constitution of the State of Florida.

132.	Fla. Const. Article X, §6 provides that "No private property shall be taken except for public purpose with full compensation therefor paid to each owner . . ."

133.	Under Florida law, the measure of "full compensation" is a constitutional

entitlement wherein the theory and spirit of such guarantee requires the practical attempt to make the owner whole. *Behm v. Division of Administration, Dept. of Transportation*, 383 So.2d 216 (Fla. 1980); *Jacksonville Expressway Authority v. Henry G. Du Pree Co.*, 108 So.2d 289 (Fla. 1959).

134. Such measure includes the fair market value of the property taken, severance damages, special damages, and damages to improvements removed or destroyed, the loss of contributory value of such improvements to the real estate, as well as other damages not yet ascertained. *See* <u>*Division of Administration, State of Florida Dept. of Transportation v. Ness Trailer Park, Inc.*</u>, 489 So.2d 1172 (Fla. 4th DCA 1986); <u>*Division of Administration, State Dept. of Transportation v. Jirik,*</u> 471 So.2d 549 (Fla. 3d DCA1985), <u>*approved*</u> 498 So.2d 1253; <u>*Pinellas County v. Austin,*</u> 323 So.2d 6 (Fla. 2d DCA 1975); <u>*Boney v. State, Dept. of Transportation,*</u> 250 So.2d 650 (Fla 1st DCA 1971); <u>*State Road Dept. of Florida v. McCaffrey,*</u> 229 So.2d 668 (Fla. 2d DCA 1969); <u>*Florida Department of Transportation v. Armadillo Partners, Inc.*</u> 849 So.2d 279 (Fla. 2003).

135. Severance damages, likewise, may include such loss to the value of the remainder property that directly results from the condemnor's use of the property taken, market fear, stigma, or loss of aesthetic value. <u>*Hubschman v. Board of County Comm'rs,*</u> 610 So.2d 691 (Fla. 2d DCA 1992); *Taylor v.* <u>*Florida Department of Transportation,*</u> 701 So.2d 610 (Fla. 2d DCA 1997); <u>*Florida Power & Light Co. v. Jennings,*</u> 518 So.2d 895 (Fla. 1987).

136. Such measure also includes payment of these owners' attorney fees and costs. *Dade County v. Brigham,* 47 So.2d 602 (Fla. 1950).

**RELIEF REQUESTED**

Plaintiffs ask the Court to take the following action:

A.      Issue a declaratory judgment finding that Sarasota County has no authority to order owners to remove any existing improvement located on the land subject to the newly-created federal rail-trail easement, or, in the alternative, to find that if Sarasota County has such authority by reason of the Board's invocation of the federal Trails Act, that the landowners are entitled to compensation in the currently pending action in the Court of Federal Claims.

B.      Issue an order quieting title as to the respective rights of the owners of the fee estate, the United States (through the Surface Transportation Board) and Sarasota County as to the land subject to the Board's May 2019 order.

C.      Issue a temporary restraining order and preliminary injunction forbidding Sarasota County from:

1.   Ordering, threatening or effecting the removal or demolition of any shed, warehouse, home, swimming pool, septic field, fence or other existing improvement or structure, of any Plaintiff or putative class member, located within the land subject to the easement created by the Surface Transportation Board.

2.   Issuing any fine or other penalty against Plaintiffs and the putative class members due to having alleged encroachments within the land subject to the easement created by the Surface Transportation Board.

3.  Entering on to the private property of Plaintiffs and the putative class members with respect to the alleged encroachments within the land subject to the easement created by the Surface Transportation Board.

D.  To the extent this Court finds Sarasota County is claiming an interest in these owners' property that is greater than that interest granted Sarasota County by reason of the Board's invocation of Section 8(b) of the federal Trails Act, order Sarasota County to pay these owners just compensation as required by the Fifth Amendment to the U.S. Constitution, as applied through the 14th Amendment and 42 U.S.C. 1983, or, if greater, full compensation as required by Article X, § 6 of the Constitution of the State of Florida..

E.  Order Sarasota County to pay any expenses or relocation costs these owners incur as required by the Uniform Relocation Act.

F.  Order Sarasota County and the Board to reimburse these owners' attorney fees, expert witness fees, litigation expenses and costs, as provided by 42 U.S.C. 1988 or, if greater, under the state measure of full compensation as required by Article X, § 6 of the Constitution of the State of Florida.

G.  Issue such other and further relief as the Court deems proper.


Date: March 30, 2020

Respectfully submitted,

*/s/ Mark F. (Thor) Hearne, II*
MARK F. (THOR) HEARNE, II
Stephen S. Davis
True North Law, LLC
112 South Hanley Road, Suite 200
St. Louis, MO  63105
Phone: (314) 296-4000
Fax: (314) 296-4001

thor@truenorthlawgroup.com

Andrew Prince Brigham
Edward Scott Copeland
Trevor Shane Hutson
Brigham Property Rights Law Firm
2963 Dupont Avenue, Suite 3
Jacksonville, FL 32217
(904) 730-9001
abrigham@propertyrights.com

*Counsel for the Landowners*