UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM GRAMES, BROOKE GRAMES, CRAIG B. DICKIE, CYNTHIA D. DICKIE, JUDY H. JOHNSON, JAMES KOSTAN, DIANE KOSTAN, PATRICK J. LOYET and LISA A. LOYET,

 Plaintiffs,

v.            Case No: 8:20-cv-739-CEH-CPT

SARASOTA COUNTY, FLORIDA, and UNITED STATES OF AMERICA,

 Defendants.
_____/

# ORDER

  This matter comes before the Court on the Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Doc. 4). In the motion, Plaintiffs argue that the case is appropriate for class certification as it meets all the requirements under Federal Rule of Civil Procedure 23. *Id.* Plaintiffs further request an order appointing their counsel as class counsel. *Id.* at 17. The federal Defendants filed a response in opposition, in which Sarasota County joined, contending Plaintiffs' motion falls far short of satisfying Rule 23's requirements. Docs. 76, 77. A hearing on the motion was held January 5, 2021. The Court, having considered the motion, heard argument of counsel, and being fully advised in the premises, will deny Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

## I. BACKGROUND

### A. Factual Background

This is a rails-to-trails case concerning a 7.68-mile line of railroad in Sarasota County, Florida that extends the federal Legacy Trail between Sarasota and Venice. The Legacy Trail is a public recreational trail and a rail-trail corridor easement the federal government "railbanked" under the National Trails System Act.[1] Plaintiffs, William and Brooke Grames, Craig B. and Cynthia D. Dickie, Judy H. Johnson, James and Diane Kostan, and Patricia J. and Lisa A. Loyet, (collectively "Plaintiffs") are Florida landowners who seek a declaration of the respective rights to their property and to enjoin Sarasota County from removing or demolishing their private property in order to extend the Legacy Trail until they are justly compensated. In this putative class action, Plaintiffs sue, on behalf of themselves and all others similarly situated, Defendants, Sarasota County, Florida; Ann D. Bergman, Patrick J. Fuchs, Martin J. Oberman, and Surface Transportation Board ("Board"),[2] in a six-count Complaint for declaratory relief, quiet title, injunctive relief, just compensation under the Fifth Amendment of the United States Constitution, damages under the Uniform

---

[1] "The National Trails System Act Amendments of 1983 (Amendments), Pub. L. 98-11, 97 Stat. 48, to the National Trails System Act (Trails Act), Pub. L. 90-543, 82 Stat. 919 (codified, as amended, at 16 U.S.C. § 1241 *et seq.*), is the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990).

[2] The complaint was amended on February 26, 2021, (Doc. 93) and names Sarasota County and the United States of America as Defendants. The Surface Transportation Board and individual Defendants (Bergman, Fuchs, and Oberman) were terminated as parties on March 1, 2021.

Relocation Act, and compensation under Article X, Section 6 of the Florida Constitution. Doc. 1

Plaintiffs allege that in the early 1900s much of the land now known as Sarasota County was owned by Bertha Palmer and members of her family, including her son Adrian Honore. Doc. 1, ¶ 9. In November 1910, Adrian Honore, the predecessor-in-interest to present-day landowners, granted Seaboard Air Line Railway a right-of-way easement across his land allowing Seaboard to build and operate a railway line from Sarasota to Venice. *Id.* ¶ 11. The easement provided if at any time the railroad abandoned the land for railroad purposes, the property would revert to Honore, his heirs or assigns. *Id.* The right-of-way easement Honore gave Seaboard ultimately was transferred to CSX Transportation ("CSXT"), which leased the railway line to Seminole Gulf Railway, L.P. ("Seminole Gulf"). *Id.* ¶ 15.

By 2002 CSXT and Seminole Gulf no longer operated a railroad over the land, nor had any need for the right-of-way. *Id.* ¶ 116. In March 2019, Seminole Gulf requested the Surface Transportation Board ("the Board") allow it to abandon the 7.68-mile segment of rail line between Sarasota and Venice. *Id.* ¶ 17. According to Seminole Gulf, no local or overhead traffic had moved over the line since prior to 2007. *Id.* ¶ 18. After the railroads told the Board they wanted to abandon the railway line, Sarasota County asked the Board to invoke section 8(d) of the Trails Act and authorize Seminole Gulf and CSXT to transfer the otherwise abandoned right-of-way to Sarasota County so that Sarasota County could build a public recreational trail across these owners' land. *Id.* ¶ 20. Plaintiffs allege that Seminole Gulf and CSXT had

3

no right to transfer or sell any interest the railroads had in the land, unless transferring to another railroad. *Id.* ¶ 21.

In May 2019, the Board issued an order called a Notice of Interim Trail Use ("NITU") invoking section 8(d) of the Trails Act, which provided that use of the right-of-way for trail purposes was to be subject to a possible future reconstruction and reactivation of the right-of-way for rail service ("railbanking"). *Id.* ¶ 22. This same Seaboard railroad right-of-way was subject to prior Trails Act litigation in the Court of Federal Claims and involved the southern section of the Legacy Trail. *Id.* ¶ 24. Some of the landowners have also instituted litigation in the Court of Federal Claims, *see 4023 Sawyer Road I, LLC v. United States*, regarding the land at issue here. *Id.* ¶ 25. Because the Court of Federal Claims has no jurisdiction over Sarasota County and can only award monetary damages, not injunctive relief, Plaintiffs filed the instant action in this Court. *Id.* ¶ 26.

**B. Class Allegations**

According to Plaintiffs' motion for class certification and the Complaint, the putative class consists of:

> Those Sarasota County landowners who have filed claims for compensation in the United States Court of Federal Claims and to whom Sarasota County issued demands or threats requiring that the owners remove existing structures or other improvements from their property.

Doc. 4 at 3; see also Doc. 1 ¶ 68.

The named representative Plaintiffs, William and Brooke Grames ("Grames family"), Craig B. and Cynthia D. Dickie ("Dickie family"), Judy H. Johnson

("Johnson"), James and Diane Kostan ("Kostan family"), and Patricia J. and Lisa A. Loyet ("Loyet family") are individuals and families that currently own land in Sarasota County, Florida, and whose land the federal government took for the northern extension of the Legacy Trail. Doc. 1 ¶¶ 41–61. Plaintiffs allege that they hold title to the fee estate in their land subject to the Board's order invoking section 8(d) of the Trails Act and subject to Sarasota County's demand that they remove some existing structure or improvement from their land. *Id.* ¶ 41.

The Grames family owns their land under the former Seaboard railway right-of-way, which is subject to an easement for public recreation and railbanking under section 8(d) of the Trails Act. *Id.* ¶ 44. The Dickie family bought their property in 1978. *Id.* ¶ 46. Their land is under the former Seaboard railway right-of-way and is now subject to an easement for public recreation and railbanking under section 8(d) of the Trails Act. *Id.* ¶¶ 48–49. Johnson bought her land in 1998. *Id.* ¶ 50. The Kostan family bought their land in 2011 and the Loyet family bought their land in 2001. *Id.* ¶¶ 54, 58. The properties owned by the Kostan family, Johnson, and the Loyet family are similarly under the former Seaboard railway right-of-way and are now subject to an easement for public recreation and railbanking under section 8(d) of the Trails Act. *Id.* ¶¶ 56–60. All of the Plaintiffs owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act. *Id.* ¶¶ 45, 49, 53, 57, 61.

Plaintiffs allege that "hundreds of Sarasota County landowners are part of the class and subject to Sarasota County's threatened action, thereby satisfying Fed. R. Civ. P. 23(a)(1)'s numerosity requirement. *Id.* ¶¶ 70–73. According to Plaintiff,

5

Sarasota County sent three hundred property owners a demand that the owners remove "encroachments" from their properties. *Id.* ¶ 72. Plaintiffs cite to Sarasota County's website which states, "[t]here are 236 total encroachments with some properties having multiple encroachments. Of the 236 total encroachments, there are 89 located within the City of Sarasota." *Id.* ¶ 73. In the hearing, counsel indicated that about 240 individual property owners make up the class. Doc. 82 at 38.

Plaintiffs allege the relief sought by this class action is common to all class members and that common questions of law and fact exist. Doc. 1 ¶ 77. Specifically, Plaintiffs seek a declaration as to whether Sarasota County can be permitted to force landowners to remove existing improvements from their property. Plaintiffs seek injunctive relief against Sarasota County until the scope of its authority has been determined by the Court. *Id.* ¶¶ 77–78. Each Plaintiff and putative class member are being subjected to a purported unconstitutional taking. *Id.* ¶ 79. Plaintiffs allege their claims are typical of the putative class members and their interests are the same. *Id.* ¶ 81. Each are subject to the Board's order and the demand by Sarasota County. *Id.* Plaintiffs allege they will adequately represent the putative class because their interests are completely aligned and there are no known conflicts of interest. *Id.* ¶¶ 84–85.

## II. LEGAL STANDARD

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may be maintained only when it satisfies all the requirements of Federal

Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See Busby v. JRHBW Realty*, 513 F.3d 1314, 1321 (11th Cir. 2008). The initial burden of proof to establish the propriety of class certification rests with the Plaintiff. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

"Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). "[W]ithout an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Cherry*, 986 F.3d at 1302 (citation omitted).

The parties seeking to maintain the class action must affirmatively demonstrate their compliance with Rule 23. *Dukes*, 564 U.S. at 350 (Rule 23 is more than a "mere pleading standard."). Plaintiffs must be prepared to prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis supplied). As explained in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." 350 F.3d 1181, 1187 (11th Cir. 2003).

Under Rule 23(a), a class may be certified only if:

  (1) the class is so numerous that joinder of all members is impracticable;

  (2) there are questions of law or fact common to the class;

  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Plaintiffs rely on Rule 23(b)(3), which provides that a class action may be maintained if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). The party seeking to maintain the class action must affirmatively demonstrate its compliance with Rule 23. *Dukes*, 564 U.S. at 350–51. "Failure to establish any one of these four [Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Valley Drug Co.*, 350 F.3d at 1188 (citation omitted).

### III. DISCUSSION

  Plaintiffs move to certify the putative class of "Sarasota County landowners who have filed claims for compensation in the United States Court of Federal Claims and to whom Sarasota County issued demands or threats requiring that the owners remove existing structures or other improvements from their property." Doc. 4 at 5.

Defendants do not actively contest Plaintiffs' standing or the class definition. Although the Court finds Plaintiffs likely have standing to bring these claims,[3] Plaintiffs' motion for class certification fails because Plaintiffs do not establish that the requirements of Rule 23(a) and (b) have been satisfied.

### A. Requirements under Rule 23(a)

Courts consider the following criteria in determining whether a case satisfies the requirements for class certification under Rule 23(a): (1) numerosity, (2) commonality, (3) typicality and (4) adequacy. *Hines v. Widnall*, 334 F.3d 1253, 1255–56 (11th Cir. 2003); *Franze v. Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002).

*i. Numerosity and Impracticability of Joinder*

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs seeking class certification do not need to know the exact size of the proposed class. *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). While the size of the proposed class is relevant to a court's determination, other factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" should also be considered. *Id*.

---

[3] To establish individual Article III standing, a party must allege that: 1) it suffered an injury in fact; 2) such injury is fairly traceable to the defendant's alleged conduct; and 3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "[T]he district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

(quotations omitted). Generally, more than forty putative class members is adequate. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986). Plaintiffs allege the class consists of "hundreds" of landowners. Doc. 1 ¶ 73. The class is defined as "Sarasota County landowners *who have filed claims for compensation* in the United States Court of Federal Claims and to whom Sarasota County issued demands or threats." Doc. 4 at 3. Although Defendants initially argued in their response that Plaintiffs failed to carry their burden of identifying the overlap between landowners who filed claims and those who received demands from the County, defense counsel acknowledged at the hearing that there are 200 individual landowners who have also filed claims in the United States Court of Federal Claims. Thus, while the size of the class may be sufficient, Defendants nevertheless argue Plaintiffs cannot demonstrate that it is impracticable as evidenced by the landowners pursuing individual claims in the Court of Federal Claims. Plaintiffs do not address the issue of impracticability in their motion and thus they fail to carry their burden. However, even if the Court found the numerosity requirement satisfied, Plaintiffs do not satisfy the commonality and typicality requirements of Rule 23(a), and therefore their motion fails.

*ii. Common Questions of Law and Fact*

The commonality requirement typically "refers to the group of characteristics of the class." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). However, it is not necessary that all members of the class have identical claims.

10

*See Prado–Steiman*, 221 F.3d at 1279 n.14. Commonality, like typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Id*. at 1278.

Plaintiffs claim they satisfy the commonality requirement because the "named landowners and the rest of the class are in the same position, and Sarasota County has treated them the same way," Doc. 4 at 10, and that "[a]ll of these owners are in the same boat," *id.* at 11. Plaintiffs' blanket assertion ignores the fact that the Court will have to evaluate each claim on a property-by-property basis and each putative class member will have to demonstrate his or her ownership and interest in their respective property. A claim to quiet title requires a plaintiff to "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d). Given this pleading and proof requirement for each landowner, the Court will necessarily need to examine each deed. As such, the Court is in doubt that common contentions exist. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("[A] common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.") (citation omitted). As noted by Defendants, even the deeds attached as exhibits to the Complaint reveal differing language as to the property interests held by the named Plaintiffs. Plaintiffs fail to carry their burden of establishing commonality, particularly where the Court will need to engage in a property-specific analysis on a number of material issues.

11

*iii. Typicality*

Typicality requires that a class representative "possess the same interest and suffer the same injury as the class members." *Cooper*, 390 F.3d at 713. Therefore, "the typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan*, 222 F.R.D. at 698 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Even if the fact patterns are unique to each claim, if the class representative and class members experienced the same unlawful conduct, the typicality requirement will be satisfied. *See Agan*, 222 F.R.D. at 698. However, like commonality, Rule 23 does not require that all members of the class have identical claims. *See id.* at 714.

Plaintiffs again make the blanket statement that they "are similar to and typical of those of the other Sarasota County landowners whose property is subject to the Surface Transportation Board's order and who are also receiving threats and demands from Sarasota County that they demolish or remove existing improvements." Doc. 4 at 13. The Eleventh Circuit has explained that "[i]nquiries into typicality focus on the similarities between the class representative's claims and the claims of the individuals in the putative class." *Hines,* 334 F.3d at 1257. Plaintiffs assert their claims are typical of the putative class because they are subject to the Board's order invoking section 8(d) of the Trails Act and subject to Sarasota County's demand that they remove some existing structure or improvement from their land. But Plaintiffs do not present evidence of the putative class members' deeds and, of the deeds presented, as noted

above, those contain differing language as to the property interests held. Further, there has been no allegation about the nature of the structures ordered to be removed to determine if they are encroachments or on unencumbered land. Plaintiffs' bare assertions that their claims are typical do not suffice to satisfy the requirements of Rule 23(a).

### *iv. Adequacy of Protection of Class Interests*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the action. *See Busby*, 513 F.3d at 1323 (citing *Valley Drug Co.*, 350 F.3d at 1189). This requirement serves to uncover any conflict of interest that named parties may have with the class they represent. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 627 (1997). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Valley Drug Co.*, 350 F.3d at 1189. Minor conflicts alone will not defeat class certification, the conflict must be "fundamental" to the specific issues in the case. *Id*. Under this section, the Court must also consider the competency and any conflicts that the class counsel may have. *See Amchem Products, Inc.*, 521 U.S. at 627 n.20.

Plaintiffs allege they are adequate representatives of the putative class because their interests are "entirely aligned" with those of the class and there is no conflict of interest. Additionally, Plaintiffs assert their counsel are experienced in litigating

13

complex civil rights matters, including other rail-to-trails cases, and are well-qualified to prosecute the claims here. Defendants do not challenge Plaintiffs' counsel and the Court finds no apparent conflict. Rather, Defendants argue that the interests of some class members may not be "entirely aligned" as Plaintiffs suggest. Specifically, Defendants submit that since the Legacy Trail is a public recreational trial, there may be adjacent landowners who will benefit from, and desire, easy trail access. Defendants submit this is an obvious, fundamental conflict that Plaintiffs fail to address. There is no known conflict on the record, but as Defendants point out, the Plaintiffs' allegations on this issue are simply too sparse. But even if Plaintiffs are adequate representatives, they must satisfy all four criteria of Rule 23(a), which they fail to do.

### B. Requirements under Rule 23(b)

In order to have a class certified, the representative Plaintiffs must not only satisfy Rule 23(a), but must also show that they meet one of the alternative requirements of Rule 23(b). Plaintiffs' motion argues they satisfy the requirements for certification under Rule 23(b)(3).

To satisfy the class certification requirement under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)). Thus, Rule 23(b)(3) imposes two additional requirements to Rule 23(a): predominance and increased efficiency (superiority).

*i. Predominance*

The issues raised in the class action that are subject to generalized proof and that are applicable to the class as a whole "must predominate over those issues that are subject only to individualized proof." *Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)). The Court should not certify a class if it appears that most of the plaintiffs' claims have highly case-specific factual issues. *See id.* The predominance requirement is "far more demanding" than the commonality requirement. *Jackson*, 130 F.3d at 1005.

As discussed above, Plaintiffs fail to satisfy their burden to show commonality due to the presence of case-specific factual issues. For the same reasons, Plaintiffs cannot satisfy the predominance requirement. Establishing their quiet title action, the nature of their property interests, and establishing whether their structures are on unencumbered property necessarily will require individualized analyses. As such, it is apparent that individualized proof will be necessary to evaluate Plaintiffs' claims and that the individual issues predominate.

*ii. Superiority of Class Action*

Rule 23 requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court looks to the four non-exclusive factors listed in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

In their motion, Plaintiffs claim that a class action is superior because individual lawsuits will result in greater manageability problems, repeated adjudication of similar controversies, and excessive costs. Doc. 4 at 17. Defendants respond that Plaintiffs fail to demonstrate that a class action is superior to other alternatives. Doc. 76 at 19.

"[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication." *Cherry*, 986 F.3d at 1304 (citing Fed. R. Civ. P. 23(b)(3)). In undertaking this comparison, courts consider whether "a class action create[s] more manageability problems than its alternatives" and "how do the manageability concerns compare with the other advantages or disadvantages of a class action." *Id.* at 1304–05. Given the individualized inquiries the Court must undertake regarding the respective deeds and property-specific structures, class

16

adjudication is not necessarily superior. As pointed out by Defendants, the landowners have been able to adequately pursue individual claims in the Court of Federal Claims. The need to present evidence specific to each class member defeats the benefits and efficiencies obtained through class treatment. Plaintiffs have failed to carry their burden of demonstrating a class action is superior to other mechanisms such as joinder of plaintiffs or consolidation of similar claims. Thus, Plaintiffs fail to satisfy Rule 23(b)'s requirements.

Plaintiffs have failed to carry their burden of satisfying the requirements of Rule 23. Accordingly, it is hereby

**ORDERED**:

1. Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Doc. 4) is **denied**.

**DONE AND ORDERED** in Tampa, Florida on March 1, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any