## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WILLIAM GRAMES, BROOKE
GRAMES, CRAIG B. DICKIE,
CYNTHIA D. DICKIE, JUDY H.
JOHNSON, JAMES KOSTAN, DIANE
KOSTAN, PATRICK J. LOYET and
LISA A. LOYET,

     Plaintiffs,

v.                          Case No: 8:20-cv-739-CEH-CPT

SARASOTA COUNTY, FLORIDA
and UNITED STATES OF AMERICA,

     Defendants.

_____/

## O R D E R

     This matter comes before the Court on Defendant United States of America's
Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 95).  In the motion,
the United States requests this Court enter an order dismissing with prejudice Count
I, which asserts a claim against the United States under the Quiet Title Act, 28 U.S.C.
2409a. Plaintiffs filed a response in opposition (Doc. 102), and the United States
replied (Doc. 105). Also pending is Sarasota County's Motion Joining the United
States' Motion to Dismiss (Doc. 101). The Court, having considered the motions and
being fully advised in the premises, will grant Defendants' motions, dismiss Count I
of the Second Amended Complaint, and dismiss the United States as a party to this
action.

## I.    BACKGROUND[1]

Plaintiffs, William and Brooke Grames, Craig B. and Cynthia D. Dickie, Judy H. Johnson, James and Diane Kostan, and Patricia J. and Lisa A. Loyet, (collectively "Plaintiffs") are owners of five properties in Sarasota, Florida. Doc. 93 ¶ 1. Plaintiffs seek a declaration as to the respective rights to their property and to enjoin Sarasota County from removing or demolishing their private property in order to build the northern extension of the Legacy Trail. *Id.* The Legacy Trail is a public recreational trail and a rail-trail corridor easement the federal government "railbanked" under the National Trails System Act.[2]   Each of the five owners holds title to the fee estate in land that is now subject to the Surface Transportation Board's ("the Transportation Board") order invoking section 8(d) of the Trail Act. Doc. 93 ¶ 1. The Board, successor to the Interstate Commerce Commission, is an agency of the United States. *Id.* ¶ 23. The parties are familiar, as set forth in several prior orders, with the general background of this rails-to-trails case regarding Adrian Honore's granting of a right-of-way easement to Seaboard Air Line Railway and CSXT Transportation and Seminole Gulf Railway's ultimate abandonment of the line. *See* Docs. 10, 66, 84.

---

[1] The following statement of facts is derived from Plaintiffs' Second Amended Complaint (Doc. 93), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss.  *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] "The National Trails System Act Amendments of 1983 (Amendments), Pub. L. 98-11, 97 Stat. 48, to the National Trails System Act (Trails Act), Pub. L. 90-543, 82 Stat. 919 (codified, as amended, at 16 U.S.C. § 1241 *et seq.*), is the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990).

Relevant to the United States' motion to dismiss, Plaintiffs assert a Quiet Title Act ("QTA") claim against the United States and Sarasota County in Count I of the Second Amended Complaint. Doc. 93 ¶¶ 73–85. Specifically, Plaintiffs sue the United States for the conduct of the Transportation Board and its members. *Id.* ¶ 23. A QTA claim must set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States. *Id* ¶ 76 (quoting 28 U.S.C. § 2409a(d)).

Regarding Plaintiffs' claimed title in the property, Plaintiffs allege that William and Brook Grames ("the Grames family") bought their land on September 30, 1999. Doc. 93 ¶ 2. Their property is identified by Sarasota County as parcel #0089-01-0055. *Id.* ¶ 3. The Grames family holds title to the fee estate in land now subject to the Board's order invoking the federal Trails Act. *Id.* ¶ 4. By reason of the Transportation Board's invocation of section 8(d) of the Trails Act, the Grames family's land is now subject to an easement for public recreation and railbanking. *Id.* The Grames family owned their property in May 2019 when the Transportation Board invoked section 8(d) of the federal Trails Act. *Id.* ¶ 5.

Plaintiffs Craig and Cynthia Dickie ("the Dickie family") bought their land on January 26, 1978 and owned their property in May 2019 when the Transportation Board invoked section 8(d) of the federal Trails Act. *Id.* ¶¶ 6, 9. The Dickie family's property is identified by Sarasota County as parcel #0053-04-0006. *Id.* ¶ 7. The Dickie family holds title to the fee estate in land now subject to the Transportation Board's

order invoking the federal Trails Act, and by reason of the Board's invocation of section 8(d) of the Trails Act, the land is now subject to an easement for public recreation and railbanking.[3] *Id.* ¶ 8.

Plaintiff Judy Johnson ("Johnson") bought her land on January 19, 1998, and owned the property in May 2019 when the Transportation Board invoked section 8(d) of the federal Trails Act. *Id.* ¶¶ 10, 13. Johnson's property is identified by Sarasota County as parcel #0089-16-0006. *Id.* ¶ 11. She holds title to the fee estate in land now subject to the Transportation Board's order invoking the federal Trails Act. *Id.* ¶ 12. By reason of the Board's invocation of section 8(d) of the Trails Act, Johnson's land is now subject to an easement for public recreation and railbanking. *Id.*

Plaintiffs James and Diane Kostan ("the Kostan family") bought their land on December 16, 2011. *Id.* ¶ 14. The property is identified by Sarasota County as parcel #0053-14-0002. *Id.* ¶ 15. The Kostan family holds title to the fee estate in land now subject to the Transportation Board's order invoking the federal Trails Act. *Id.* ¶ 16. By reason of the Transportation Board's invocation of section 8(d) of the Trails Act, the Kostan family's land is now subject to an easement for public recreation and railbanking. *Id.* The Kostan family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act. *Id.* ¶ 17.

---

[3] "The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities." *Caldwell v. United States*, 57 Fed. Cl. 193, 194 (2003) (quoting *Arnold v. United States*, 137 Fed. Cl. 524, 552 (2018)).

Patrick and Lisa Loyet ("the Loyet family") bought their land on January 30, 2001. *Id.* ¶ 18. The Loyet family's property is identified by Sarasota County as parcel #0070- 15-0037. *Id.* ¶ 19. The Loyet family holds title to the fee estate in land now subject to the Transportation Board's order invoking the federal Trails Act. *Id.* ¶ 20. By reason of the Transportation Board's invocation of section 8(d) of the Trails Act, the Loyet family's land is now subject to an easement for public recreation and railbanking. *Id.* The Loyet family owned their property in May 2019 when the Board invoked section 8(d) of the federal Trails Act. *Id.* ¶ 21.

Plaintiffs allege the United States' right, title, or interest arises from the Transportation Act of 1920. *Id.* ¶ 78. Specifically, Plaintiffs assert the United States took "an owner's state law interest" in the real property under an abandoned or terminated railroad line when the Transportation Board invoked section 8(d) of the Trails Act. *Id.* ¶ 79. Plaintiffs allege the terms of the Honore easement originally granted to Seaboard Air Line Railway was limited to use for railroad purposes and did not contemplate other uses, such as for a public recreational trial. *Id.* ¶ 54. Thus, Plaintiffs allege the United States' invocation of the Trails Act imposed a new easement on the landowners and "effected a Fifth Amendment taking of their property." *Id.* (quoting *Rogers v. United States*, 90 Fed. Cl. 418, 432 (2009)).

Plaintiffs allege the United States' right, title, and interest in land for a new rail-trail corridor is preemptive of any right, title or interest the owners may hold under state law. *Id.* ¶ 80. Additionally, the United States may reacquire the right to reactivate

5

rail service over the railbanked line. *Id.* ¶ 81. As to the United States' right, title and interest in the Plaintiffs' real property, Plaintiffs allege the United States claims an interest in the subject property for interim use as a public recreational trail and for use as a future railroad. *Id.* ¶ 82.

Plaintiffs allege Sarasota County's right, title, and interest in the real property (as a trail user) is authorized by the Transportation Board for interim use as a recreational trail and is subject to the right of the Board to replace Sarasota County with another trail user or authorize a rail carrier to build a railway across the land. *Id.* ¶ 83.

Plaintiffs seek a determination by the Court as to "the right, title, and interest the United States took in these owners' real property" and what "right, title, and interest in the subject property the United States gave to Sarasota County to use." *Id.* ¶ 85.

The United States moved to dismiss Plaintiffs' QTA claim—the sole claim pending against the United States in the Second Amended Complaint. Doc. 95. The United States argues this Court lacks subject matter jurisdiction, citing two alternative bases to support dismissal. First, the United States argues Plaintiffs fail to plead a disputed interest in real property with the particularity required by the QTA to satisfy their burden of showing a waiver of sovereign immunity. Second, even if Plaintiffs were able to allege a real property interest claimed by the United States, Plaintiffs' claims nevertheless fail as their QTA claim is simply an artfully pleaded Fifth

Amendment takings claim over which the Court of Federal Claims has exclusive jurisdiction.

Plaintiffs respond that they have properly pleaded a QTA claim against the United States. Doc. 102. Regarding the United States' claimed interest, Plaintiffs argue the United States claimed, and continues to claim, reserved easements in the Plaintiffs' property. Additionally, Plaintiffs contend that a QTA claim against the United States is proper where, as here, a third party asserts the United States' interests. Plaintiffs submit that the United States' jurisdictional challenge is a facial attack, and thus the Court is limited to considering the allegations of the complaint. Plaintiffs assert the United States, through the Board's invocation of the Trails Act, has claimed an interest in the subject property for use by Sarasota County as a recreational trail. Plaintiffs allege they have interests in this same property by reason of their deeds granting them title to the fee estate.

In response to the United States' argument that the Second Amended Complaint is a cleverly pleaded takings claim that should be litigated in the U.S. Court of Federal Claims, Plaintiffs contend that the Court of Federal Claims can only award money damages and does not have equitable jurisdiction to hear a QTA claim, nor does it have jurisdiction over Sarasota County. For the reasons that follow, the Court will grant Defendants' motions and dismiss Count I of the Second Amended Complaint.

## II.   LEGAL STANDARD

In this case, the United States challenges the Court's subject matter jurisdiction. A defendant may attack subject matter jurisdiction in two different ways—facially and factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam). Here, the United States makes a facial challenge. A facial attack on subject matter jurisdiction under Rule 12(b)(1) "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Id.* at 1529 (citations omitted). In assessing a motion to dismiss pursuant to Rule12(b)(1) the Court affords Plaintiffs the same safeguards as those provided in opposing a Rule 12(b)(6) motion, it considers all allegations of the complaint as true and it is confined to the four corners of the complaint. *Id.*

## III.   DISCUSSION

It is black letter law that "[t]he United States, as sovereign, is immune from suit [unless] it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). The United States contends the Court lacks jurisdiction because Plaintiffs have not sufficiently alleged a waiver of sovereign immunity. The terms "upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957).

One such scenario in which the United States consents to be sued is in a properly pleaded quiet title action. The QTA provides that the "United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." *McMaster v. United States*, 177 F.3d 936, 939 (11th Cir. 1999) (quoting 28 U.S.C. § 2409a(a)). As the phrase "adjudicate a disputed title" itself demonstrates, there must be a dispute, and that dispute must relate to "title to real property." *Id.* "The dispute must not merely concern 'title to real property' in the abstract, but must concern the quality of title between the plaintiff and the United States and not the quality of title between the United States and a third party." *Id.* (citation omitted).

As the United States' motion points out, in Count I, Plaintiffs are seeking a declaration of the respective rights, title and interest claimed by the parties. This requested relief demonstrates the futility of Plaintiffs' pleading. A QTA claim must *allege* the right, title or interest claimed by the United States that is in dispute with the Plaintiffs' claimed interest. A QTA claim is not a vehicle for the Court to determine what interest the United States claims.

The QTA provides for a limited waiver of sovereign immunity to determine title to disputed real property, 28 U.S.C. § 2409a(a), and is only applicable where the United States claims an interest in the subject property. Plaintiffs contend that the United States asserted an interest to the subject property by the Board's invocation of the Trails Act thereby making Plaintiffs' properties subject to an easement for public recreation and railbanking. The United States responds that the property rights in a

rail-banked right-of-way are those of the trail sponsor, *i.e.*, Sarasota County, and not the United States. Doc. 95 at 13 (collecting cases). Indeed, review of the Plaintiffs' allegations reveals the gravamen of Plaintiffs' complaints concern Sarasota County's efforts to remove encroachments from Plaintiffs' land such as "fences, sheds, septic drain fields, warehouses, swimming pools, and other improvements." Doc. 93 ¶¶ 64–70. Thus, the competing claims to the property at issue are the Plaintiffs' desire to leave their sheds and swimming pools intact on the subject easement where they have existed for decades, and Sarasota County's interest in having these improvements removed for a public recreational trail.

Plaintiffs allege that the United States holds an interest in the land to the extent that the property may be reactivated as a railroad in the future. It is true the Board retains regulatory authority over the railway line, including the power to reactivate railroad service at some point in the future. A QTA claim, however, is not the appropriate vehicle to challenge a federal agency's regulatory authority. *See, e.g., Sch. Bd. of Avoyelles Parish v. Dep't of the Interior*, 647 F.3d 570, 580 (5th Cir. 2011) ("Nothing in the text of the QTA suggests that it authorizes a suit to collaterally challenge a permit issued by a federal agency."). Further, Plaintiffs' attempt to identify the United States' interest in the property as some amount of sticks it has retained after giving Sarasota County a lesser number of sticks, *see* Doc. 93 ¶ 84, is too vague to sufficiently allege a waiver of sovereign immunity.

Plaintiffs rely on the Ninth Circuit's opinion in *Leisnoi v. United States*, 267 F.3d 1019, 1023–24 (9th Cir. 2001) for the proposition that this court has jurisdiction to

adjudicate a dispute when a third party's claim clouds the plaintiff's title. This Court has previously stated that Plaintiffs' claim that their titles are "clouded" does not satisfy the specific pleadings requirements of § 2409a(d) and is too vague to establish a waiver of sovereign immunity. Doc. 84 at 9. Moreover, the Eleventh Circuit has made clear that the dispute in a QTA action must be a dispute calling into question the title or ownership of the property as between the plaintiff and the United States. *McMaster*, 177 F.3d at 941–42 (holding court lacked jurisdiction to consider QTA claim where the present dispute between plaintiff and the United States concerning the covenants failed to call into question either the title to or the ownership of the subject property as between plaintiff and the United States).

Taking Plaintiffs' allegations as true, Plaintiffs' grievances derive from their dissatisfaction with Sarasota County's efforts to remove improvements from Plaintiffs' land. Because Plaintiffs fail to adequately allege a disputed interested vis-a-vis the United States, Plaintiffs fail to plead a cause of action under the Quiet Title Act and fail to sufficiently allege the waiver of sovereign immunity. Thus, the motion to dismiss is due to be granted for lack of jurisdiction. The Plaintiffs have been given an opportunity to identify the United States' claimed interest that is in dispute and have failed to do so. The Court finds further amendment would be futile.

Although Plaintiff names Sarasota County in Count I, a claim under the Quiet Title Act ("QTA") is a claim against the United States. Thus, Count I is due to be dismissed against Sarasota County.

The United States alternatively argues that this action is merely a disguised takings case, over which the Court of Federal Claims has jurisdiction. The Court agrees. Where the primary focus of litigation is an effort by a plaintiff to obtain money from the Government, as it is here, "the exclusive jurisdiction of the Claims Court cannot be avoided by drafting a complaint which appears to seek only injunctive, mandatory, or declaratory relief against the Government." *Chula Vista City Sch. Dist. v. Bennett*, 824 F.2d 1573, 1579 (Fed. Cir. 1987) (*Hoopa Valley Tribe v. United States*, 596 F.2d 435, 436 (Ct. Cl. 1979)). Thus, even if Plaintiffs were able to effectively plead a disputed interest by the United States, the ultimate issue here is how Plaintiffs will be compensated for the taking of their property.

Plaintiffs allege the Honore easement was limited to railroad use and was not authorized for recreational trails. In discussing the Honore easement in another rails-to-trails case, the Court of Federal Claims in *Rogers v. United States* explained:

> If standard abandonment had occurred . . . , the railroad, as the owner of the servient estate, would not retain any property interest in the right-of-way, and that property interest would revert to the dominant landowner. Thus, by preventing this reversion under state law, the Trails Act effects a taking. . . . In another sense—the dominant consideration in these types of taking cases-the taking occurs when the government, pursuant to the Trails Act, creates a new easement for a new use over land that was encumbered by an easement limited to railroad purposes. *See Preseault v. U.S.*, 100 F.3d 1525, 1550 (Fed. Cir. 1996) ("*Preseault II*") (describing the conversion of a railroad easement to a recreational trail as "a new easement for [a] new use"). The statutory imposition of this second easement—which otherwise had not been granted—is a taking.

*Rogers*, 90 Fed. Cl. at 428. As it relates to the United States, this is precisely the situation here. A new easement was created for a new use and is appropriately addressed by a Fifth Amendment takings case before the Court of Federal Claims. Indeed, Plaintiffs have filed and are actively litigating their takings case regarding the subject easement in the Court of Federal Claims.

Accordingly, it is hereby

**ORDERED**:

1.     Defendant United States of America's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 95) is **GRANTED**.

2.     Sarasota County's Motion Joining the United States of America's Motion to Dismiss Second Amended Complaint (Doc. 101) is **GRANTED**.

3.     Count I of the Second Amended Complaint is **DISMISSED**.

4.     As all claims against the United States in this action have been dismissed, the Clerk is directed to terminate the United States as a party to this action.

**DONE AND ORDERED** in Tampa, Florida on January 25, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any